Case 2020CV000758    Document 7    Filed 01-28-2020    Page 3 of 16

FILED
01-28-2020
John Barrett
Clerk of Circuit Court
2020CV000758
Honorable Mary Triggiano-
13
Branch 13

**STATE OF WISCONSIN    CIRCUIT COURT    MILWAUKEE COUNTY**
**CIVIL DIVISION**

PAUL R. CONFORTI,
11123 Sewell Drive
Louisville, KY 40291

   Plaintiff,

and

HUMANA CARESOURCE,
c/o Legal Department
230 North Mail Street
Daytona, OH 45402,

ABC INSURANCE COMPANY

   Involuntary Plaintiffs,

v.

CITY OF FRANKLIN,
c/o Sandra L. Wesolowski, City Clerk
9229 West Loomis Road,
Franklin, WI 53132

OFFICER CHRISTOPHER RYDELSKI,
Franklin Police Department
9455 W. Loomis Road
Franklin, WI 53132,

OFFICER GARY WALLACE,
Franklin Police Department
9455 W. Loomis Road
Franklin, WI 53132,

LEAGUE OF WISCONSIN MUNICIPALITIES MUTUAL INSURANCE,
c/o Matthew Becker, Registered Agent
402 Gammon Place, Suite 225
Madison, WI 53719

   Defendants.

Case No.

**COMPLAINT**

Personal Injury – Other 30107
[Trial by Jury Demanded]

**EXHIBIT A**

NOW COMES Plaintiff, PAUL R. CONFORTI, by his attorneys, Scott B. Thompson and Mark L. Thomsen, of GINGRAS, THOMSEN & WACHS, LLP, and complains against the above-named Defendants, and for his claims for relief, alleges and shows to the court as follows:

## I. INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights to be free of illegal stop, unlawful arrest, and excessive force by police.

## II. PARTIES

2. That at the time of the incident, the plaintiff, Paul R. Conforti, was an adult resident of the United States, living in the greater Milwaukee area at the time period surrounding the principal events of this complaint. Mr. Conforti now resides at 11123 Sewell Drive, Louisville, KY 40291. Mr. Conforti suffered severely on January 7, 2019, through to this day, and into the future, as a result of Defendants' unlawful conduct.

3. That at the present time, the involuntary plaintiff, Humana CareSource (hereinafter "Humana"), is a foreign corporation, duly organized and existing under and by virtue of the laws of the State of Wisconsin, with offices of its Registered Agent, Legal Department, located at Humana CareSource, 230 North Main Street, Dayton, OH 45402; that Humana had paid medical and related bills on behalf of plaintiff, Paul Conforti, as a result of injuries he sustained in this incident that is the subject to his lawsuit; that Humana has no legal right to subrogation or reimbursement despite its payment of benefits, but by reason of such payments, Humana is a proper party herein pursuant to sec. 803.03, Wis. Stat.

4. That ABC Insurance Company ("ABC"), is the fictitious name for an unknown insurance company, the identity and location of which is unknown, that upon information and belief paid medical and related bills on behalf of plaintiff, Paul Conforti, as a result of injuries he sustained in this incident that is the subject to his lawsuit; that ABC has no legal right to subrogation or reimbursement despite its payment of benefits, but by reason of such payments, ABC is a proper party herein pursuant to sec. 803.03, 807.12 Wis. Stats.

5. That at the present time, the defendant, City of Franklin (hereinafter "Franklin"), is a municipal government located within the State of Wisconsin with its primary address as 9229 West Loomis Road, Franklin, Wisconsin, 53132. Franklin established, operated and maintained the Franklin Police Department (hereinafter "FPD") at all times material hereto; Franklin is ultimately responsible for the training, supervising, and discipline of FPD employees and the creation and implementation of its policies and procedures through its Chief of police, and had ultimate control and authority over FPD and all Defendants, and pursuant to Wis. Stat. § 895.46, is obligated to indemnify all Defendants in this action.

6. That at the time of the incident that is the subject of this lawsuit, the defendant, Officer Christopher Rydelski, was an adult citizen of the State of Wisconsin; that on information and belief, at all times material hereto, Officer Christopher Rydelski was an employee/agent of the defendant, FPD, and at all times relevant to this action and was acting under color of law and within the scope of his employment with the FPD or Franklin at all times relevant hereto.

7. That at the time of the incident that is the subject of this lawsuit, the defendant, Officer Gary Wallace, was an adult citizen of the State of Wisconsin; that on information and belief, at all times material hereto, Officer Gary Wallace was an employee/agent of the defendant,

FPD, and at all times relevant to this action and was acting under color of law and within the scope of his employment with the FPD or Franklin at all times relevant hereto.

8. That the present time, the defendant, League of Wisconsin Municipalities Mutual Insurance, (hereinafter "LWMMI"), is an Wisconsin insurance corporation, duly licensed in the State of Wisconsin, with offices of its Registered Agent, Matthew Becker, located at Leauge of WI Municipalities Mutual Ins., 402 Gammon Place, Suite 225, Madison, WI 53719; that said defendant is engaged in the business of writing and selling a policy of liability insurance covering the conduct of Defendant Officers Rydelski and Wallace which forms the subject matter of this complaint. That by virtue of the laws of the State of Wisconsin, LWMMI is a proper defendant herein and is directly liable to the plaintiff for his injuries and damages set forth herein.

### III. GENERAL FACTUAL ALLEGATIONS

9. On January 7, 2019, Mr. Conforti saved his friend's life.

10. In exchange for his compassion, Defendants Rydelski and Wallace of the Franklin Police Department rewarded Mr. Conforti by violently attacking him as he later left the hospital his friend was still receiving treatment.

11. That evening, Mr. Conforti and two friends, Michael Beals and Randi Slomski, were socializing in southeastern, Wisconsin.

12. As the night drew to a close, the trio began to part ways.

13. While they were walking towards Mr. Conforti's truck, Mr. Beals began to panic.

14. Mr. Conforti quickly recognized that Mr. Beals was suffering—he watched Mr. Beals' breathing grow increasingly labored, while his movements became erratic.

15. Mr. Conforti recognized a medical emergency—Mr. Beals was choking.

16. At that moment Mr. Conforti sprang into action.

4

17. With the aid of Ms. Slomski, Mr. Conforti helped to calm Mr. Beals' movements, and removed an obstruction from Mr. Beals' airway.

18. Mr. Conforti dialed 911.

19. The ambulance arrived on scene, shortly thereafter.

20. The emergency responders informed Mr. Conforti and Ms. Slomski that they could accompany Mr. Beals in the ambulance on the ride to the hospital.

21. Thanks to Mr. Conforti's quick actions, Mr. Beals lived.

22. Sadly, the FPD, and Defendants Rydelski and Wallace, were not going to let a good deed go unpunished.

23. As Mr. Beals regained consciousness in his hospital room, he grew confused and disoriented.

24. Hospital staff indicated that Mr. Beals would be administered additional medication.

25. Mr. Beals resisted this decision from hospital staff because he was already on other medication.

26. Mr. Beals grew unruly as the scene unfolded, and the hospital staff called the police regarding Mr. Beals.

27. The January 8, 2019 reports of both Defendant Wallace and Defendant Rydelski, establish that the police were called specifically over Mr. Beals' behavior, not that of Mr. Conforti.

28. At around 11:39 pm, as the police arrived, Mr. Conforti left the hospital room and walked toward the front desk with Ms. Slomski.

29. Mr. Conforti was concerned for Mr. Beals' ongoing safety and was upset that hospital staff appeared to be putting Mr. Beals' life in danger for a second time by administering additional medication.

30. Mr. Conforti became upset in the hospital lobby while he feared for his friend's life for the second time that night.

31. After only ninety (90) seconds in the lobby (between 11:39 pm and shortly before 11:41 pm), Mr. Conforti decided to leave.

32. Hospital security footage shows Mr. Conforti calmly leaving the building at 11:40 pm.



33. Mr. Conforti walked out into the parking lot to call a cab and go home.

34. Ms. Slomski stayed behind after Mr. Conforti left.

6



35.     Around forty (40) seconds after Mr. Conforti calmly left the building, at 11:41 pm, Defendants Rydelski and Wallace entered the hospital lobby.



36.     According to Defendant Wallace's January 8, 2019 report, the woman at the front desk told him that "[Mr. Conforti] already left."

37.     Immediately, Defendants Rydelski and Wallace left the building to chase Mr. Conforti, who had just saved his friend's life.

7



38.   When Defendants Rydelski and Wallace exited the building, Mr. Conforti was using his vape pen.

39.   From behind, Mr. Conforti heard the pair shouting at him.

40.   As Mr. Conforti turned, he saw Defendants Rydelski and Wallace charging at him.

41.   At this time, Defendant Wallace had his Taser drawn from its holster.

42.   Defendant Rydelski testified under oath on February 25, 2019 that, at that moment Mr. Conforti was not being disorderly and was not mouthing off to either Defendant Rydelski or Defendant Wallace:

8

> Q   He wasn't being disorderly out there, right?
> A   At that point, no.
> Q   Okay. And he wasn't mouthing off to you or Officer Wallace, correct?
> A   I don't remember the exact verbiage that he said, no.

43. Mr. Conforti feared for his life as the officers encroached on him, with at least one weapon drawn.

44. Defendants Rydelski and Wallace saw that Mr. Conforti had a vape pen in one of his hands.

45. Defendants Rydelski and Wallace demanded that Mr. Conforti remove his other hand from its pocket.

46. In response to this demand, Mr. Conforti asked simply, "Why, I'm just vaping."

47. Rather than answer Mr. Conforti's valid question, Defendants, at or about 11:41 pm, unlawfully grabbed him.

48. At that moment, there was no reason to suspect that Mr. Conforti was committing a crime, or was about to commit a crime, or that Mr. Conforti was in any way a threat to the officers or to anyone in the community. Again, he had just saved his friend's life.

49. Regardless, Defendants Rydelski and Wallace slammed Mr. Conforti's face against their squad car, chipping his tooth and breaking his glasses.

50. The attack knocked the wind out of Mr. Conforti.

51. Exasperated, and with his mouth filling with blood, Mr. Conforti coughed.

52. Defendants "claimed" that Mr. Conforti had spit on them, and then slammed Mr. Conforti's face onto the ground, gashing his cheek open.

9

53. Defendants continued to attack Mr. Conforti with strikes to the head and throat, and knee strikes to his torso.

54. Mr. Conforti feared that he would die in the cold parking lot at the hands of Defendants Rydelski and Wallace.

55. Eventually, Defendants Rydelski and Wallace forced Mr. Conforti's bleeding head into a muzzle.

56. The attack left Mr. Conforti beaten, bruised, and bloodied:



57. After they were through with him, at or about 12:03 am, the Defendants bound and restrained Mr. Conforti and returned him to the hospital on a wheel chair to receive medical treatment.



58. Ironically, this was the same hospital that Mr. Beals was brought to earlier in the evening, after Mr. Conforti saved his life.

10

59. Subsequent to this attack on his body and his civil rights, Mr. Conforti has suffered immense mental trauma, including acute anxiety, panic, and emotional harm.

60. As a result of the unlawful attack by Defendants Rydelski and Wallace, Mr. Conforti developed Post Traumatic Stress Disorder and continues to suffer.

## IV. FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS RYDELSKI AND WALLACE – VIOLATIONS OF THE FOURTH AMENDMENT

61. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

62. At all relevant times herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Mr. Conforti of his constitutional rights.

63. At all times material hereto, the Defendants unlawfully arrested and used unnecessary, excessive force, including but not limited to, grabbing, tackling, injuring his neck and face, kneeling him, and slamming Mr. Conforti's face into the side of their squad car, while he was subdued in handcuffs.

64. That at the time the Defendants used excessive force there was no threat of death or serious bodily harm to the officers or anyone in the area.

65. That the Defendants' conduct constituted violations of the Fourth Amendment, including using excessive force without cause or justification in violation of Mr. Conforti's Fourth Amendment Rights as incorporated by the Fourteenth Amendment.

66. At all times material, the Defendants were FPD Officers acting under color of the statutes, customs, ordinances, and usage of the Franklin and FPD and were acting in the scope of their employment.

67. That the described conduct of the part of the Defendants as set forth above was a cause of the plaintiff's injuries, losses, and damages as set forth herein.

68. The Defendant, Franklin, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the unlawful acts described above.

## V. SECOND CLAIM FOR RELIEF—FAILURE TO INTERVENE AGAINST DEFENDANTS RYDELSKI AND WALLACE

68. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

69. By the time Defendants Rydelski and Wallace exited the hospital, Mr. Conforti was not committing any crime, and there was no reason to suspect that he had or was about to commit a crime.

70. Before Mr. Conforti suffered from the unlawful arrest and abuse and excessive use of force described above, the individual Defendants individually and collectively, had many opportunities to intervene and prevent all the injuries and losses Mr. Conforti suffered as a result of the unlawful conduct and excessive use of force.

71. As a result of the individual Defendant Officers' failure to intervene, Mr. Conforti suffered injuries, losses and damages as set forth herein.

72. The Defendant Franklin is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

## VI.    THIRD CLAIM FOR RELIEF

73.    Plaintiff realleges and incorporates by reference all the allegations in the preceding paragraphs.

74.    That the above-described conduct of all the individual Defendants was unlawful, extreme, malicious, outrageous and/or intentional.

75.    That such conduct was intended to cause Mr. Conforti unnecessary and severe personal physical and psychological and emotional injuries.

76.    That such conduct on the part of all the individual Defendants was a cause of the severe personal injuries, physical and psychological and emotional, suffered by Mr. Conforti.

77.    At all times material hereto, the individual Defendants acted maliciously and/or with reckless disregard and/or with deliberate indifference towards Mr. Conforti or in an intentional disregard of his rights, such as to subject all the individual Defendants to punitive damages.

78.    The Defendant Franklin is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the unlawful acts described above.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

a.    Against Defendants Rydelski and Wallace in their individual capacities, for compensatory damages, for the violation of Mr. Conforti's constitutional rights, as set forth above, in an amount to be determined at a trial of this matter;

b.　Against Defendants Rydelski and Wallace for punitive damages for the violation of Mr. Conforti's constitutional rights, as set forth above, in an amount to be determined at a trial of this matter;

c.　Against Defendant City of Franklin for its liability pursuant to Wis. Stat. § 895.46 to indemnify the individual Defendants in an amount to be determined at a trial of this matter;

d.　Against Defendant LWMMI pursuant to its contractual liability for this matter, stemming from its insurance policy covering the Defendants City of Franklin, Rydelski, and Wallace.

e.　For a declaration that Humana has no legal right to subrogation or reimbursement.

f.　For a declaration that ABC has no legal right to subrogation or reimbursement.

g.　For all costs, disbursements and actual attorneys' fees pursuant to 42 U.S.C.A. § 1988, and for such other relief as the Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL BY SIX CITIZENS OF THIS MATTER ON ALL ISSUES SO TRIABLE.**

Dated this 28th day of January, 2020.

　　　　　　　　　　　　　　　　　　　GINGRAS, THOMSEN & WACHS, LLP
　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff

　　　　　　　　　　　　　　　　　　Electronically filed by Attorney Scott B. Thompson
　　　　　　　　　　　　　　　　　　　Scott B. Thompson
　　　　　　　　　　　　　　　　　　　State Bar No.: 1098161
　　　　　　　　　　　　　　　　　　　Mark L. Thomsen
　　　　　　　　　　　　　　　　　　　State Bar No.: 1018839
　　　　　　　　　　　　　　　　　　　8150 Excelsior Drive
　　　　　　　　　　　　　　　　　　　Madison WI 53717
　　　　　　　　　　　　　　　Telephone:　(608) 833-2632
　　　　　　　　　　　　　　　Facsimile:　(608) 833-2874
　　　　　　　　　　　　　　　Email: sthompson@gtwlawyers.com
　　　　　　　　　　　　　　　Email: mthomsen@gtwlawyers.com

14